And we are going to call case number three, Appeal 23-1718 Sysco Indianapolis LLC v. Teamsters Local 135. Okay, we welcome to the podium Mr. Vlynk. Am I pronouncing that correctly? May it please the court, counsel, my name is David Vlynk and I'm appearing on behalf of the appellant in this case, Teamsters Local 135. Local 135 and the Appalee Sysco Indianapolis have had a long-standing dispute over whether their collective bargaining agreement requires Sysco to pay Local 135's members and the employees it represents a supplemental early retirement benefit of $500 a month if they retire between the ages of 55 and 65 with 20 years of service. There's a long history, but this case just relates to whether there's a current grievance over Sysco's failure to pay that benefit is arbitrable. The collective bargaining agreement between Sysco and Local 135 contains an arbitration clause that requires arbitration of any controversy, complaint, or dispute arising as to the interpretation or application of or the compliance with any provision of this agreement. Local 135's grievance in this case protesting Sysco's failure to pay the supplemental early retirement benefit that was negotiated and agreed upon during collective bargaining negotiations in 2013 is arbitrable under the plain language of the arbitration clause and controlling Supreme Court and Seventh Circuit precedent regarding the arbitrability of disputes arising under collective bargaining agreements. It seems to me we have cases going in two different directions. You were absolutely right that Mr. Smith's grievance cites Article 18 of the collective bargaining agreement. So a court deciding the matter of arbitration, whether it can be arbitrated, could simply look at that and say it cites the CBA, that's what we're going to decide whether it goes to the courts or not. It seems to me we also have courts that actually go to the substance of the claim and decide whether that dictates the arbitration question. Why is your preferred method, when we have cases going both ways, the superior one? Because Supreme Court law, going back to the Steelworkers Trilogy in 1960, is really the same, and Warrior and Golf Navigation, those two cases from the Trilogy. The court specifically says that the arbitrability of determination has to be made without regard to the merits of the grievance. And the courts have no business, and this court has said this as well, is the court has no business in considering whether there's equity in a claim or determining whether there is language in the agreement supporting the grievance. So it would be improper, in our view, to go to the merits to say, OK, does the contract support the grievance or not? We certainly think it does, and we've laid out with specificity numerous contract provisions that we think support our grievance. And I would also like to note the grievance itself, it does cite Article 18. If you look at it as well, it also says, and all others that may apply. So we have Article 18, and Article 18, if you read it, it just says that the employees are eligible to enroll in the Cisco pension plan. But counsel, is the pension plan itself part of the CBA, or is it a separate agreement? No, it is not. And that, I think, is actually an important point, and thank you for raising that. That is not what we are saying. We are not arguing that the pension plan is incorporated into the contract. That's the Nabisco case. That's the case that's relied on most forcefully by Cisco. And in that case, the union and the grievance did claim a benefit under the terms of the pension plan document. And that's why that case is distinguishable, and it is different than our case. We are arguing that the supplemental early retirement benefit is protected by the collective bargaining agreement, regardless of what the Cisco pension plan document may say about it. So, and just to clarify, what you are arguing is that despite the fact that the supplemental retirement benefits, the right to it are not explicitly mentioned in the CBA, that if we look at the history of how the parties developed, the parties had agreed that the 2018 CBA would include a requirement that the employees receive an SCRB, right? And so, and is that where the argument, so what you are arguing is that the right doesn't flow from the pension plan, but from this agreement that the parties had that would be part of the 2018 CBA that didn't actually make it explicitly into the CBA. That's correct, Your Honor. The one thing I would correct you on is the agreement actually happened in 2013, the 2013 contract. And is that why the absence of a zipper clause matters? Absolutely. It's very important that our contract doesn't have a zipper clause or what a commercial contract might refer to as an integration clause, where it would say our contract is limited to the express words written herein. In fact, we have the very opposite of that. It's called a maintenance of standards clause. We have that in our contract. And one of our arguments, and there are many, is that we had an agreement in 2013 that our members would receive the supplemental early retirement benefit, and the eligibility requirements were very clear, the amount of it was very clear. When the first employee retired, they didn't get it, a grievance was filed, and that went to a joint grievance committee panel, which for purposes of Section 301 is no different than an arbitration, because that panel had the authority to render final and binding determinations. And that panel unanimously sustained the union's grievance, in effect saying, Cisco, you're incorrect. You violated the contract. The union and its members are entitled to this benefit, okay? And that was under the 2013 contract. Nothing changed with regard to that in the 2018 contract. And the 2018 contract has a maintenance of standards provision that says, you know, those conditions of employment that aren't expressly stated herein. But Mr. Blank, what are we to do with the, Cisco's argument that while the parties were negotiating the 2018 agreement, that the union requested that the right to a supplemental retirement benefit be expressly included in the CBA, and Cisco said, we're not going to do it. Thank you. And that's also a very important part that I think the district court got incorrect. What the evidence on that is actually disputed, but it really goes to the merits versus the arbitration clause. And this court stated that in the Trimas case. When we're talking about that kind of evidence for purposes of arbitrability, the evidence has to go to the arbitration clause itself. And there is no- But it does, doesn't it? Because if the obligation arises out of the pension plan, then we're in Nabisco land. And that sounds kind of nice. But if our dispute arises out of a, let's call it a unwritten term that the parties agreed to as part of the CBA, then it arises out of the CBA. So it seems to me that that does relate to arbitrability. Okay. Even if it does, it's disputed as to the nature of the discussions during the 2018 negotiations. And that would have to be determined by an arbitrator. Cisco says that the union proposed that we're going to have the CERB now, and we want it written in the contract. We have evidence, an affidavit from the union's negotiator that says, no, what actually happened is we just simply proposed to clarify the contract of an agreement that was already reached. And then in response, Cisco didn't reject that proposal. It said, and it's important to note, the earlier litigation was still ongoing at this time. And Cisco said, we don't want to negotiate over something that's currently in litigation, but we will follow whatever the court's decision is. And the union prevailed in that litigation. So from our perspective, that means there was an agreement that we would continue to have the supplemental early retirement benefit. And I see that my time is expiring. I'd like to reserve the remainder of my time for rebuttal. Thank you. You will. And Mr. Carter. Thank you, Your Honor. May it please the court. My name is Mark Carter. I represent Cisco, Indianapolis. We're here to try to help the court decide whether or not the parties agreed to arbitrate pension benefits. Now, you've just heard counsel for the union say, but they're not pension benefits. They're part of the contract. Let's look at what the Seventh Circuit says about trying to make a determination as to whether or not there is substantive arbitrability. And that is plainly and firmly defined in the Nabisco case that's been referenced. And we believe strongly that this case is nearly on all fours, factually. But in Nabisco, the union didn't make the argument that there was a separate agreement apart from the pension plan that would give them the right. And here, that is what the union is arguing. Absolutely correct, Your Honor. The problem is there is not an agreement. There's no evidence. Well, I guess that kind of goes to my next question, which is, where you have a case like this where the determination of arbitrability, in other words, whether or not the CBA had an agreement between the parties as to the supplemental retirement benefits, because if that's part of the CBA, then it's arbitrable. If it's not, then it's not. And there is kind of an overlap between that issue and the merits issue, obviously. Is that factual determination or determination something that the district court should make, or is that something that the arbitrator should make? It's one that the district court should make, because under the Steelworkers Trilogy, the court was very clear that this is a judicial question, not necessarily an arbitrator's determination. It's a judicial question always as to whether or not there is substantive arbitrability. Okay. But what if the district court's determination, in effect, decides the merits of the dispute? If the district court needs to determine the merits of the dispute by referring to the collective bargaining agreement to determine whether the party is entitled to win the arbitration, then it's not permitted. But here, the merits of the dispute are actually defined under the plan itself. The CERB is expressed within the Cisco pension plan. Section 10 of the plan. I guess let's take it separate and apart from the CERB and the pension plan. Say that the union is arguing that, separately, the employer agreed to provide every employee with a car, okay? And your client's position is that did not happen, right? That's not part of the CBA. And so the union says, well, we think it is part of the CBA, and so that dispute has to be arbitrated. And your client says, no, no, no, no, no, that's not going to be arbitrated because that clause, that agreement is not part of the – there was no such agreement that's part of the CBA. And so then the initial question of whether or not something is part of the CBA is the same question as the merits. And so in a situation like that, what is a district court to do? Does a district court still have to determine arbitrability by looking at it so long, even if it has to decide some merits issues along the way? Yes. And the BISCO makes it clear that not only is the court the appropriate determinator of that issue, but the court outlines what the court should be looking at. The court should be looking, in this kind of a case, if I may return it back to the instant case, the court should be looking at whether or not the pension plan was created in the collective bargaining agreement or if it's independent of the collective bargaining agreement. In the BISCO, the plan was preexisting, and it covered thousands of employees nationwide. It did so, and that was relevant because if the pension plan is separate and apart from the collective bargaining agreement and the parties didn't negotiate the terms of the pension plan, then that doesn't make the issue arbitrable. Exactly the same here. The pension plan was created at least 1973, decades before the dispute arose, back when I was playing Little League, and I've been through a few games, and they're totally independent from one another. The court instructs us to look to the bargaining history between the parties. Why? Because the court wants to know if the terms that are sought to be arbitrated were proposed and either accepted or rejected in bargaining. What's your best evidence of the bargaining history here? The best evidence of the bargaining history here is as the court referred to Scott Richardson's deposition that includes in the record the actual bargaining proposals made by the union, which can be found at docket 24-1, pages 1 to 18. I'm familiar with it. Why doesn't his declaration actually point to a dispute between the parties? Because his declaration basically says, you know, the CISCO is not going to negotiate the inclusion of CERB in the CBA because, you know, it's in litigation. Mr. Richardson testified as well that CISCO would not bargain over pension benefits. That's right. So we have two actually different things. We have his testimony saying our position writ large is no pension benefits will ever be in the CBA, but we also have these notes in the record, okay? The bargaining notes and the handwritten note saying another reason, a contrary reason perhaps, is that it wasn't going to be included because it's in litigation. They're going to wait. They're going to be bound by what the district court decides. It's very interesting. The bargaining notes you're referring to are from one of the negotiators in the 2013 contract, not the 2018 contract. But it still hadn't been decided at the time they were negotiating the 2018 contract, which is why it was still relevant. What was happening with the 2013 decision was relevant during the 2018 negotiations. So why isn't my question is why is that not a dispute about what the bargaining history shows? They're not, Your Honor, they're not in dispute. The 2013 litigation is whether or not what's about. Whether or not CISCO complied with a determination of a joint panel. It was not about whether or not the CERB was in the contract. In fact, if you look at the decision of the joint committee, they don't find that there was a collective bargaining agreement, and that's located at docket 19-2, page 28 of 28. What the panel found was that at the time of our ratification vote in March, we were told that all bargaining unit employees would receive $500 a month above our normal pension. And then the company said there was more criteria. That's what the joint panel found. Well, if CISCO wasn't paying the requisite amount of pension benefits, then what is the objective of the grievance that's at issue today? It's to get more pension benefits. And pension benefits are only provided by the CISCO plan, and they're only provided by the CISCO plan under the constraints of that plan, and that's what it says in the contract as well. And the constraints of the plan are you can only get more pension benefits in a dispute if you bring a claim under the plan. That's what you need to do in order to get to an arrest action. This is not a matter that the parties agreed to arbitrate because it's not in the contract. And NABISCO says you need to look for whether or not there is a lack of pension terms in the CBA. The review of either the 2013 or the 2018 contracts, it's self-evident. There are no pension terms. The only right in the contract is to eligibility to enroll. It was top of mind to Mr. Richardson, negotiating the 2018 contract, that there be no benefits, pension benefits in the contract, and that is why there's no eligibility, and that's why under NABISCO the decision of the district court was inevitable. I'll yield my time unless there's any more questions. I was told once by a circuit court, Mr. Carter, when we stop asking you questions, stop talking. Thank you, Mr. Carter. Thank you, Your Honor. Mr. Blink, we'll give you two minutes. Thank you, Your Honor. One thing I'd like to point out, just as a matter of the record, Your Honor asked about the notes, and Mr. Carter said that those notes were from the 2013 negotiations. They're actually not. They're from the 2018 negotiations, and I'm looking at Appellant's Appendix 230 next to the union's proposal. There's a handwritten note from Cisco that says not negotiating something in litigation bound by the decision. So those were the notes that I thought Your Honor was referring to, and so that really highlights what was talked about and discussed during the bargaining history in 2018 that Cisco relies on. Secondly, counsel said, you know, if you look at NABISCO says if there's a lack of pension terms in the CBA, then that should indicate that the grievance should not be arbitrable. I don't believe that's correct. I don't believe that's really what NABISCO is meaning to say, and I think the court's two subsequent cases in Exelon and Carl Schmitt Unesha are really instructive on that point. Those were both benefits, grievances, where the employer was arguing this is not arbitrable. It's under the plan. The union was pointing to language in the contract that it argued guaranteed contractually those benefits for its members. There's nothing in those cases that says that language has to be specific to the benefits. It doesn't say that, and that would actually be an incorrect holding, again, because American Manufacturing Quote, the Steelworkers Trilogy says, the courts have no business determining whether there is particular language in the written instrument which will support the claim. And with my last 10 seconds, I would just like to point to this court's decision in IBEW Local 21, and that was there was no language in that contract whatsoever regarding the subject matter of the dispute, but the court found it arbitrable anyway based on the union's citation to other contractual provisions. Thank you very much. Okay. Thank you, Mr. Blink and Mr. Carter. We'll take the case under advisement.